UNITED STATES DISTRICT COURT
Southern District of Florida

STACIE PALMERO ROMERO and YOUDANIS ROMERO, individually and as parents and natural guardians of J.J.P.R., a minor,

        Plaintiffs,

vs.                            CASE NO.:

UNITED STATES OF AMERICA,

        Defendant.
_____/

## COMPLAINT

COME NOW, Plaintiffs, STACIE PALMERO ROMERO and YOUDANIS ROMERO, individually and as parents and natural guardians of J.J.P.R., a minor, by and through the undersigned counsel, sues the UNITED STATE OF AMERICA and alleges:

1. This action arises under Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-80.

2. The Court has jurisdiction pursuant to 28 U.S.C. § 1346(b)(1).

3. Venue is proper in the Southern District of Florida in the Ft. Pierce Division where negligent acts and omissions alleged herein took place.

4. Defendant, UNITED STATES OF AMERICA, is the proper party to this action under the Federal Tort Claim Act, supra, for the negligent acts and omissions of its agencies and their agents and employees. 28 U.S.C. § 1346(b)(1).

5. Florida Community Health Centers, Inc. is a FTCA deemed facility, a Health Center Program grantee under 42 U.S.C. 254b, and a deemed Public Health Service employee under 42 U.S.C. 233(g)-(n).

6. At all times material hereto, Dr. David Mateo was an agent and/or employee of Florida Community Health Center, Inc. and acting in the course and scope of their employment or agency.

7. At all times material hereto, Heather Brigance was an agent and/or employee of Florida Community Health Center, Inc. and acting in the course and scope of their employment or agency.

8. At all times relevant herein, Dr. David Mateo was a physician duly licensed in the State of Florida.

9. At all times relevant herein, Heather A. Brigance was a Advanced Registered Nurse Practitioner and Certified Nurse Midwife duly licensed in the State of Florida.

10. At all times material hereto, Dr. David Mateo was required to supervise and was legally responsible for the negligent acts and omissions of Heather Brigance.

11. Plaintiff has complied with all conditions precedent including but not limited to 28 U.S.C. § 2401 and Fla. Stat. ch. 766 and/or they have been waived including but not limited to Defendant's the failure to provide a presuit affidavit from appropriate healthcare providers or engage in presuit discovery.

PALMERO ROMERO v. UNITED STATES
Complaint
CASE NO.
Page 3/14

12. Plaintiffs have properly and individually presented their claims in writing to the appropriate Federal agency pursuant to 28 U.S.C. § 2401 including the submission of Form 95 which are attached hereto as Composite Exhibit "A" without enclosures. Department of Health & Human Services confirmed receipt thereof on January 20, 2016. Exhibit "B." Plaintiff's claims were rejected by letter dated June 14, 2016. Exhibit "C."

13. Plaintiffs have properly and individually presented their claims in writing to the appropriate Federal agency pursuant to 28 U.S.C. § 2401 including the submission of Form 95 which are attached hereto as Composite Exhibit "D" without enclosures.

14. On September 30, 2016, Plaintiffs requested reconsideration of the Department of Health & Human Services's rejection of their claims. Exhibit "E." Plaintiff's reconsideration request was rejected by letter dated October 20, 2016. Exhibit "F."

15. Accordingly, Plaintiffs exhausted their administrative remedies against the Department of Health & Human Serviced before filing a district court action against the UNITED STATES OF AMERICA under 28 U.S.C. § 1346(b)(1). 28 U.S.C. § 2675(a).

16. STACIE PALMERO ROMERO and YOUDANIS ROMERO, are the parents and natural guardians of J.J.P.R., a minor.

17. At all times relevant herein, Defendant, through its healthcare providing agents and employees owed STACIE PALMERO ROMERO a duty of care.

18. On birth date minus two days, Stacie Palmero Romero's baby had a well-documented gestational age of 40 weeks.

19. On birth date minus two days at a 10:00 am appointment, Dr. Mateo ordered a fetal ultrasound and biophysical profile of his patient Stacie Palmero Romero to take place at St. Lucie Medical Center. The ultrasound was for "labor check" and was ordered based on a complaint of "watery vaginal discharge."

20. Stacie Palmero Romero presented to St. Lucie Medical Center on birth date minus two days at 14:13 for the ultrasound at 14:15.

21. The ultrasound report stated that baby was 2422 grams with a size consistent with 34-week viable gestation. The biophysical profile was 8/8.

22. After receiving the result of the ultrasound and biophysical profile, Dr. Mateo decided to induce labor and admitted STACIE PALMERO ROMERO into St. Lucie Medical Center.

23. A repeat ultrasound was not ordered.

24. At 17:15, Heather Brigance CNM was notified of the ultrasound report and baby found to be 2300 grams. She planned to call Dr. Mateo and let him make a further decision about patient care.

25. Dr. Mateo made the decision to induce labor for intrauterine growth restriction even though the cervix was unfavorable for induction.

26. Cervidil was given. At the start, Dilation was 1cm, Effacement was 25% & Station was -1. Cervidil was discontinued and removed at 11:13am on birth date minus one day and Dilation was 1cm, Effacement was 50% and Station was -3.

27. On birth date minus one day at 11:32, Misoprosotol (Cytotec) was ordered.

28. At 12:00, 17:00, and 21:12 on birth date minus one day, Stacie Palmero Romero received Cytotec 25mcg vaginally.

29. Dr. Mateo was in to discuss the plan of care at 13:20.

30. Severe sharp, burning and aching pain rated at 6 out of 10 with contractions was noted on birth date minus one day at 14:00.

31. Heather Brigance CNM examined Stacie Palmero Romero on birth date minus one day at 20:58 and administered the third dose of Cytotec at approximately 21:12. She directed the nurse to examine Stacie Palmero Romero at 5:00am and place another Cytotec with cervical exam less than Dilation of 3cm, Effacement of 80% & Station of -1.

32. On birth date at 6:55am, Stacie Palmero Romero received an epidural.

33. On birth date at 7:05, Cytotec was scanned but purportedly not used due to cervical change.

34. Stacie Palmero Romero's membranes were artificially ruptured on birth date at 8:54am. Dilation was 5cm, Effacement was 90% & Station was -1.

35. At 11:45am, Stacie Palmero Romero had not progressed and began receiving Pitocin.

36. Despite the use of Pitocin on a woman with two prior vaginal deliveries, labor did not progress.

| Time | Dilation | Effacement Station |
|---|---|---|
| 8:54 | 5 | 90-1 |
| 11:09 | 5 | 900 |
| 11:45 | Pitocin 1 mu | |
| 12:15 | Pitocin 1 mu | |
| 12:45 | Pitocin 3 mu | |
| 13:00 | Early variable decelerations begin | |
| 13:15 | Pitocin 3 mu | |
| 13:27 | 5 | 700 (by CNM Brigance) |
| 13:35 | 6 | 700 (by Dr. Mateo) |
| 13:45 | Pitocin 5 mu | |
| 14:15 | Pitocin 5 mu | |
| 14:45 | Pitocin 7 mu | |
| 15:15 | Pitocin 7 mu | |
| 15:45 | Pitocin 9 mu | |

|       |   |     |
|-------|---|-----|
| 16:07 | 6 | 600 |
| 16:15 |   | RN notified CNM Brigance of no cervical change. |
| 16:15 |   | Pitocin 9 mu |
| 16:45 |   | Pitocin 11 mu |

37. During the use of Pitocin, many contractions were more frequent that every two minutes.

38. Nurse Wisniewski notified Heather Brigance CNM at 16:15 of no cervical change and CNM Brigance was to assess the patient.

39. Mrs. Palmero Romero experience the abrupt onset of pain to fundal area and difficulty breathing.

40. At 17:05 on birth date, CNM Brigance arrived and there was no fetal heart rate being traced and nurse Wisniewski was unable to hear heart tones.

41. The nurse continued to look for fetal heart tones as the CNM Brigance performed SVE.

42. CNM Brigance attempted to locate fetal heart tones via beside ultrasound without success.

43. At 17:07, pitocin was discontinued.

44. At 17:08, an oxygen rebreather was applied

45. At 17:12, nurse Kent called Dr. Mateo for STAT arrival to Labor and Delivery.

PALMERO ROMERO v. UNITED STATES
Complaint
CASE NO.
Page 8/14

46. At 17:13, Mrs. Palmero Romero received a Terbutaline 0.25 mg injection.

47. At 17:25, Mrs. Palmero Romero arrived in the Operating Room and prepared for an emergency caesarian section..

48. According to records, Dr. Mateo arrived at 17:36.

49. J.J.P.R. was born on birth date at 17:40.

50. J.J.P.R. was born with a birth weight of 3550 grams.

51. A cord pH test was ordered and canceled.

52. J.J.P.R.'s Apgars were:

Time/Score

1 min  0

5 min  1

10 min  4

15 min  5

20 min  6

53. Between birth date minus two days and birth date, Dr. David Mateo and/or persons for whom he is legally responsible including but not limited to Heather Brigance ARNP/CNM deviated from the prevailing standard of care for physicians practicing obstetricians and gynecologists, in one of the following ways:

a) Dr. Mateo should not have induced labor with a biophysical profile of 8/8,

        unfavorable cervix, and AFI of 11.5 in the absence of more recent ultrasound for comparison to diagnose intrauterine growth restriction. Instead, he should have monitored Stacie Palmero Romero with repeat biophysical profiles and looked for signs of cervical ripening and/or fetal stress for J.J.P.R.

b)    No intrauterine pressure catheter were used when a significant amount of Pitocin and precedent cervical ripening and labor inducing agents were used.

c)    Dr. Mateo and CNM Brigance should have recognized the failure of the labor to progress in a multiparous patient who was having significant contractions with cervical ripening and labor agents and progressively increasing doses of oxytocin. In addition and under the circumstances, a dose of oxytocin should not have been allowed to exceed 10 mu.

d)    Dr. Mateo should have come and personally examined the patient to determine whether a cesarian section was appropriate.

e)    The intervals between vaginal examinations during labor were too long.

f)    Under the circumstance, Dr. Mateo and CNM Brigance should have been available on a timely basis to respond to emergent conditions particularly in light of the known risks of uterine rupture combined with the lack of progression. For example, nearly an hour response (4:15 to 5:05pm) from

        notification by the nurse was a deviation from the standard of care and the delay from the uterine rupture to delivery was a deviation from the standard of care.

    g)     The aggressive multi-day induction was not indicated and weakened the uterus causing uterine rupture.

    h)     Dr. Mateo and/or CNM Brigance did not order an intrauterine pressure monitoring catheter or immediately recognize the uterine rupture. In the alternative, Dr. Mateo and/or CNM Brigance did not enforce any orders for an intrauterine pressure monitoring catheter.

    i)     Rather than order an ultrasound when confronted with the absence or fetal heart rate, Dr. Mateo should have immediately ordered that Stacie Palmero Romero be taken to the operating room and evaluated there and he should have gotten there are quickly as possible.

    j)     Dr. Mateo should have been be available to perform the delivery on a timely basis.

54.     Between birth date minus two days and birth date, Heather Brigance ARNP/CNM deviated from the prevailing standard of care for Certified Nursing Midwives and/or Advanced Registered Nurse Practitioners, in one of the following ways:

    a)     Based on the frequency of contractions at the time of each dose, no Cytotec

should have be administered. Instead, Stacie Palmero Romero should have been monitored.

b) Brigance was notified of the failure to progress at 16:05 and should have ordered that Pitocin not be increased above 7 mu until the patient was evaluated by doctor or midwife.

c) A vaginal examination should have been perform by 15:30 on birth date to evaluate cervical change.

d) Brigance should have recognized that the patient was not progressing despite the administration of Pitocin for two hours at 13:27 on birth date.

55. As a result of the one or more of the above deviations of the prevailing standards of care proximately caused and/or substantially contributed, STACIE PALMERO ROMERO's uterus to rupture on birth date.

## COUNT I
## MEDICAL MALPRACTICE CLAIMS OF J.J.P.R.

56. Plaintiffs, STACIE PALMERO ROMERO and YOUDANIS ROMERO, as parents and natural guardians of J.J.P.R., a minor, reallege and incorporate the allegations set forth above in paragraphs 1-55.

57. As a direct and proximate result of the above, J.J.P.R. was deprived of

oxygen before his birth on birth date and suffered catastrophic injuries, bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, incurred expenses of hospitalization, medical, chiropractic and nursing care and treatment, loss of earnings, loss of ability to earn money and aggravation of a previously existing condition, disease or physical defect. J.J.P.R. is permanently and totally disabled. J.J.P.R.'s losses are either permanent or continuing and plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiffs, STACIE PALMERO ROMERO and YOUDANIS ROMERO, as parents and natural guardians of J.J.P.R., a minor, demand judgment against the UNITED STATES OF AMERICA, for compensatory damages for J.J.P.R. of $75,000,000.00 and costs.

## COUNT II
## MEDICAL MALPRACTICE CLAIMS OF J.J.P.R.

58. Plaintiffs, STACIE PALMERO ROMERO and YOUDANIS ROMERO, individually, reallege and incorporate the allegations set forth above in Count I.

59. As a direct and proximate result of the above negligence and J.J.P.R.'s resultant permanent total disability, Plaintiffs, STACIE PALMERO ROMERO and YOUDANIS ROMERO, lost the companionship, society, love, affection, and solace of J.J.P.R. along with ordinary day-to-say services that he would have rendered during his

period of minority.

WHEREFORE, the Plaintiffs, STACIE PALMERO ROMERO and YOUDANIS ROMERO, individually, demand judgment against the UNITED STATES OF AMERICA, for compensatory damages of $10,000,000 each for STACIE PALMERO ROMERO and YOUDANIS ROMERO and costs.

## COUNT III
## MEDICAL MALPRACTICE CLAIMS OF STACIE PALMERO ROMERO

60.  Plaintiffs, STACIE PALMERO ROMERO and YOUDANIS ROMERO, reallege an incorporate the allegations set forth above in paragraphs 1-55.

61.  As a direct and proximate result of the above negligence, STACIE PALMERO ROMERO, suffered bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, incurred expenses of hospitalization, medical, chiropractic and nursing care and treatment. STACIE PALMERO ROMERO's losses are either permanent or continuing and plaintiff will suffer the losses in the future.

62.  These injuries and resultant damages include but are not limited to a total hysterectomy.

63.  At all times material hereto, STACIE PALMERO ROMERO and YOUDANIS ROMERO were married to each other.

64. At as a direct and proximate result of the aforementioned negligence, YOUDANIS ROMERO, has in the past and will in the future suffer the loss of STACIE PALMERO ROMERO 's services, support, companionship, protection and consortium.

WHEREFORE, the Plaintiffs, STACIE PALMERO ROMERO and YOUDANIS ROMERO, individually, demand judgment against the UNITED STATES OF AMERICA, for compensatory damages of $2,000,000 each and costs.

Dated: December 12, 2016.                                   Respectfully submitted,

By: s/ Alfred R. Bell, Jr., Esquire
Alfred R. Bell, Jr., Esquire
Fla. Bar No.: 109649
abell@injurylawyers.com
STEINGER, ISCOE & GREENE, P.A.
507 NW Lake Whitney Place
Port St. Lucie, FL 34986
Telephone: (772) 621-9934
Facsimile: (772) 621-9954
Attorneys for Plaintiffs

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 12th day of December, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

By: s/ Alfred R. Bell, Jr., Esquire
   Alfred R. Bell, Jr., Esquire